COURT OF APPEALS
DECISION
DATED AND FILED

June 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP658**

STATE OF WISCONSIN

Cir. Ct. No. **2018JV338**

IN COURT OF APPEALS
DISTRICT I

IN THE INTEREST OF K.L.G., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-APPELLANT,

  V.

K.L.G.,

      RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: LINDSEY CANONIE GRADY, Judge. *Reversed and cause remanded for further proceedings.*

¶1    BRASH, P.J.[1]   The State appeals an order of the trial court granting K.L.G.'s motion to suppress the identification made by Milwaukee Police Officer Kim Lastrilla.   In his motion, K.L.G. argued that Officer Lastrilla used an improper identification procedure when she looked up his booking photo from a previous incident.

¶2    The trial court, citing *State v. Dubose*, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582, granted the motion and dismissed the case against K.L.G. without prejudice.   However, our supreme court recently abrogated *Dubose* in *State v. Roberson*, 2019 WI 102, 389 Wis. 2d 190, 935 N.W.2d 813, with a directive to "return to 'reliability [a]s the linchpin in determining the admissibility of identification testimony.'"   *Id.*, ¶3 (citation omitted; brackets in *Roberson*).

¶3    After reviewing this case under that standard, we conclude that Officer Lastrilla's identification of K.L.G. was sufficiently reliable.   We therefore reverse and remand this matter for further proceedings consistent with this opinion.

**BACKGROUND**

¶4    On May 24, 2018, at approximately 9:29 a.m., Officer Lastrilla responded to a call regarding a stolen vehicle in the area of 4th Street and Center Street in Milwaukee.   Officer Lastrilla saw the vehicle described in the call—a tan minivan with Iowa plates—parked in an alley behind a residence on 4th Street. She then observed two African-American males enter the vehicle.   At that point,

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18).

2

Officer Lastrilla was still in her squad car at the other end of the alley, about a block away from the vehicle.

¶5     Officer Lastrilla followed the van, which was being driven erratically.  She observed the van run a red light and almost hit another vehicle, at which time she activated the lights and siren in her squad car.  The driver of the minivan failed to stop, instead accelerating to a high rate of speed, leading Officer Lastrilla on a 2.9 mile pursuit.  The minivan then crashed into residence on East Garfield Street.

¶6     Following the crash, both of the males in the minivan exited the vehicle and fled on foot in separate directions.  Officer Lastrilla followed the driver in her squad car.  She caught up to him in an alley, while he was between a garage and a fence.  He then ran toward her squad car and continued running down the alley behind it.  As he ran by the squad, Officer Lastrilla was able to view him for "[a] second or two" at a distance of about five and one-half feet.

¶7     At that point, Officer Lastrilla's sergeant had arrived on the scene and joined the pursuit on foot as the driver ran through some yards.  Officer Lastrilla saw the driver again for a couple of seconds after he crossed a street and ran down another alley; he crossed the alley about half a block down from where Officer Lastrilla had just entered that alley in her squad.  However, neither Officer Lastrilla nor her sergeant were able to apprehend him at that time.

¶8     Shortly thereafter, Officer Lastrilla was approached by a woman who said that the driver of the minivan was her nephew.  The woman gave Officer Lastrilla his name—K.L.G.—and told her that his mother was on her way to the crash scene.  Officer Lastrilla then returned to the crash scene, where K.L.G.'s mother arrived fifteen to twenty minutes later.  His mother said he was missing,

and that she believed he had been driving the minivan. She provided Officer Lastrilla with his name and birthdate, and showed her a picture of him that was on her phone. Officer Lastrilla subsequently looked up K.L.G. in the department's database and found a booking photo of K.L.G. from February 2018. From that picture, she was able to identify K.L.G. as the driver of the minivan.

¶9 Later that same day, at about 2:20 p.m., K.L.G.'s mother came into the police station and told Officer Lastrilla that her son was in the area of 4th Street and Center Street. Officer Lastrilla drove to that area and saw K.L.G. walking. She pulled up to him in her squad car and told him to stop. He again fled. He was found hiding in a yard by another officer, and was arrested.

¶10 K.L.G. was charged with attempting to flee or elude an officer, second-degree recklessly endangering safety, and obstructing an officer. He filed a motion to suppress the identification by Officer Lastrilla on the ground that viewing his booking photo was outside of the proper procedure for making a photo identification. He argued that it was impermissibly suggestive, and therefore violated his due process rights.

¶11 A hearing on the motion was held in November 2018, at which testimony was taken from Officer Lastrilla. The trial court then delivered its decision on December 21, 2018, granting K.L.G.'s motion. Although it acknowledged that Officer Lastrilla had probable cause to arrest K.L.G. after speaking with his mother, the trial court found that Officer Lastrilla's viewing of the booking photo—as opposed to viewing a line-up or a photo array—was impermissibly suggestive, and thus had "tainted the process." Upon granting the motion, the case was dismissed without prejudice. This appeal follows.

**DISCUSSION**

¶12    In reviewing a trial court's decision on a motion to suppress, we apply a two-step standard of review.  *See* ***State v. Eason***, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.  We first review the trial court's findings of fact, and will uphold them unless they are clearly erroneous.  ***Id.***  We then "review the application of constitutional principles to those facts *de novo*."  ***Id.***

¶13    A defendant's due process rights are violated if identification evidence is admitted that stems from a police procedure that is "impermissibly suggestive."  ***State v. Benton***, 2001 WI App 81, ¶5, 243 Wis. 2d 54, 625 N.W.2d 923.  A police identification procedure is impermissibly suggestive if it "give[s] rise to a very substantial likelihood of irreparable misidentification[.]"  ***Roberson***, 389 Wis. 2d 190, ¶31 (citations and internal quotation marks omitted).

¶14    "[I]dentifications arising from single-photograph displays may be viewed in general with suspicion[.]"  ***Manson v. Brathwaite***, 432 U.S. 98, 116 (1977).  This identification procedure is referred to as a "showup"—"an out-of-court pretrial identification procedure in which a suspect is presented singly to a witness for identification purposes," as opposed to the suspect being presented in a lineup or photo array that includes other similar-looking individuals from which the witness must identify the suspect.  ***Roberson***, 389 Wis. 2d 190, ¶47 (citing ***Dubose***, 285 Wis. 2d 143, ¶1 n.1).

¶15    The trial court in this case determined that Officer Lastrilla's viewing of K.L.G.'s previous booking photo was essentially a showup.  Therefore, in making its decision on the suppression motion, the court relied on the standard adopted in ***Dubose***.  The ***Dubose*** court, while declining to adopt a per se exclusionary rule for showups, held that "a showup will not be admissible unless,

based on the totality of the circumstances, the showup was necessary." *Id.*, 285 Wis. 2d 143, ¶2. The *Dubose* court further stated that a showup would not be deemed necessary "unless the police lacked probable cause to make an arrest or, as a result of other exigent circumstances, could not have conducted a lineup or photo array." *Id.*

¶16    The trial court found that *Dubose* was on point, and that Officer Lastrilla's viewing of the booking photo was "inherently suggestive[.]" However, "not all showings of a single photo are infected by improper police influence causing a very substantial likelihood of misidentification. Each identification must be evaluated based on its own facts." *Roberson*, 389 Wis. 2d 190, ¶67. In fact, in *Roberson* our supreme court rejected the *Dubose* standard as being "unsound in principle." *Roberson*, 389 Wis. 2d 190, ¶3. Instead, the *Roberson* court instituted a return to the standard for reviewing challenged identification procedures in which the reliability of the identification is the "linchpin" for determining admissibility. *See id.*

¶17    According to that standard, the defendant must first demonstrate that the showup was impermissibly suggestive. *Id.*, ¶4. If the defendant is successful, the burden then shifts to the State to prove that "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* (citations omitted).

¶18    The State argues that Officer Lastrilla's viewing that photo was "not suggestive at all" under the circumstances:  she had seen the driver of the minivan twice for brief periods, from relatively close proximity, while pursuing him after the crash; the incident had occurred on a bright, clear day; and Officer Lastrilla was a veteran police officer who, as a part of her regular duties, had abundant

experience identifying crime suspects under stressful situations. Furthermore, Officer Lastrilla had been informed by both K.L.G.'s mother and his aunt that he was probably the driver of the minivan.

¶19    Although Officer Lastrilla stated that she did not positively identify K.L.G. until she looked at the booking photo, she testified that in looking up the photo she was primarily attempting to put K.L.G.'s mother "at ease" as to whether it was her missing son who was involved in the incident. Officer Lastrilla further testified that even before viewing the booking photo, she had sufficient probable cause to arrest him and could have made the arrest based on her recognition of him from the pursuit.

¶20    "Due process does not require the suppression of evidence with sufficient 'indicia of reliability.'" *Id.*, ¶3 (citation omitted). Even if we were to assume that Officer Lastrilla's identification of K.L.G. by viewing his prior booking photo was impermissibly suggestive, we conclude that the identification was nevertheless sufficiently reliable under the totality of these circumstances. *See id.*, ¶4. Accordingly, we reverse and remand this matter for reinstatement of the delinquency petition, and further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.